IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KAREEM MUHAMMAD,
aka Alfonza Adams,

      **Plaintiff,**

v.                                           Case No. 1:05-cv-6
                                               (Chief Judge Keeley)

DR. DORIS WILLIAMS; K.J. WENDT,
Warden, FCI-Gilmer; and J. BUNTS,
Health Services Administrator,

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On January 12, 2005, *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (authorizing suits against federal employees in their individual capacities). In the complaint, plaintiff alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him medical care.

### I. The Complaint

Plaintiff was diagnosed with HIV in 1993. At all times relevant to the complaint, plaintiff was an inmate at the Federal Correctional Institution in Gilmer, West Virginia (FCI-Gilmer). On July 8, 2004, Dr. Doris Williams, the head doctor at FCI-Gilmer, stopped plaintiffs' HIV medications. In lieu of such medications, plaintiff was prescribed aspirin.

Plaintiff asserts that although he is not a doctor, and does not have any medical training, common sense will tell you that "plain aspirin is not an adequate medical substitution for HIV medication." As a result of the deprivation of his HIV medication, plaintiff asserts that he

became sick and that he could not hold down food. Plaintiff further asserts that HIV medications must be taken daily and that the deprivation of his HIV medication almost killed him. Plaintiff seeks compensatory and punitive damages in the amount of $1,000,000 against each defendant, reasonable expenses, and any other relief the court deems appropriate.

As the defendants in this action, plaintiff originally named Dr. Williams, Warden K.J. Wendt, and unknown named medical staff at FCI-Gilmer. Janet Bunts, Health Services Administrator, was joined as a defendant in the case on April 28, 2005. Plaintiff asserts that defendants Wendt and Bunts were deliberately indifferent to his serious medical needs because they knew that Dr. Williams stopped plaintiffs' medications, but failed to do anything about it.

## II. First Report and Recommendation

On February 18, 2005, the undersigned conducted a preliminary review of the file pursuant to 28 U.S.C. §§ 1915(e) and 1915A,[1] and issued a report and recommendation as to the viability of plaintiffs' claims on federal review. In that opinion, I determined that the case should not be summarily dismissed and recommended service of the complaint on the defendants.

On April 28, 2005, the District Judge adopted that report and the Clerk was directed to serve the complaint on the defendants. Summonses issued that same day.

## III. Plaintiffs' Motions for Injunctive Relief and Addendum Complaint

On March 4, 2005, plaintiff filed a motion for injunctive relief seeking the renewal of his

---

[1] Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Title 28 U.S.C. 1915(e) also directs the court to dismiss actions which are frivolous or malicious.

HIV medications. On that same date, plaintiff also filed an Addendum Complaint in which he attempted to add K.M. White and Harrell White as defendants. Plaintiffs' motion for injunctive relief and addendum complaint were referred to me for a report and recommendation on May 12, 2005.

By separate Orders on May 27, 2005, I scheduled a hearing on plaintiffs' motion for injunctive relief and recommended that plaintiff's addendum complaint be dismissed because plaintiff failed to allege any personal involvement between K.M. White and Harrell Watts in the alleged deprivation of his constitutional rights. That report was adopted by the District Judge on July 14, 2005.

On June 9, 2005, plaintiff filed a second motion for injunctive relief. In that motion, plaintiff stated that his HIV medications had been reinstated. However, plaintiff requested an injunction: (1) preventing the Bureau of Prisons (BOP) from ever stopping his medications again; (2) requiring the BOP to provide him with a special diet; and (3) directing the defendants to cease the retaliation against plaintiff since the filing of the instant complaint.

In light of the information contained in plaintiffs' June 9th motion, the undersigned cancelled the scheduled hearing on plaintiffs' first motion for injunctive relief and terminated that motion as moot. However, I determined that plaintiff's second request for injunctive relief remained pending. Therefore, the defendants were directed to file a combined response to the complaint and plaintiff's second motion for injunctive relief. I specifically recognized that the following issues remained pending: (1) plaintiff's deliberate indifference claims; (2) plaintiffs' request for an injunction to prevent the BOP from stopping his medication in the future; (3) plaintiffs' request for an order directing the BOP to provide him with a special diet; and (4) the

3

plaintiff's request for a restraining order to protect from the alleged retaliation by Bureau staff.

## IV. Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

On July 12, 2005, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. In that motion, the defendants argue that: (1) the complaint fails to state a claim upon which relief may be granted; (2) the defendants are entitled to qualified immunity; (3) plaintiff failed to exhaust administrative remedies; and (4) 18 U.S.C. § 3626 precludes injunctive relief.

## V. Standard of Review

A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

B. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### VI. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing a claim with respect

to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens claim, like a claim under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[2] and is required even when the relief sought is not available. Booth at 741. A plaintiff must exhaust his administrative remedies prior to filing a complaint in federal court. See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Neal v. Goord, 267 F.3d 116, 123 (2d Cir. 2001); Jackson v. District of Columbia, 254 F.3d 262, 268-69 (D.C. Cir. 2001).

The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

---

[2] Id.

Here, a review of the file shows that plaintiff exhausted his administrative remedies with regard to his claim that the defendants were deliberately indifferent to his serious medical needs. However, plaintiff has failed to establish the exhaustion of administrative remedies as to his claims for a special diet or his retaliation claims. Accordingly, those claims are due to be dismissed for the failure to exhaust.

## VII. Analysis

### B. Defendants Wendt and Bunts

In the motion to dismiss or for summary judgment, the defendants argue that plaintiff's Bivens claims against Wendt and Bunts should be dismissed because *respondeat superior* is inapplicable in a Bivens case and because plaintiff cannot establish supervisory liability as to those defendants.

1. Respondeat Superior

*Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976). Rather, in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, plaintiff names Wendt and Bunts solely in their official capacities as the Warden and Health Services Administrator at FCI-Gilmer. The only part either of these defendants played in plaintiffs' medical care was Warden Wendt's denial of plaintiffs'

7

administrative remedy regarding the stoppage of his HIV medication. This is not the type of personal involvement required to state a <u>Bivens</u> claim. <u>See</u> <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Thus, because plaintiff fails to allege that either defendant Wendt or Bunts was personally involved with a deprivation of his constitutional rights, they should be dismissed.

2. <u>Supervisory Liability</u>

In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a <u>Bivens</u> action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." <u>Id.</u>

However, plaintiff cannot establish supervisory liability merely by showing that the subordinate was deliberately indifferent to his needs. <u>Id.</u> Instead, Plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. <u>Id.</u> Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. <u>Id.</u>

Here, plaintiff has failed to make the appropriate showing of supervisory liability. Plaintiff does not allege that either defendant Wendt or defendant Bunts was personally involved

8

with establishing the course of his HIV treatment. Neither has plaintiff provided any evidence that either defendant tacitly authorized or was indifferent to the alleged violation of his constitutional rights. Defendants Wendt and Bunts were entitled to rely on the medical opinion of plaintiffs' treating physician in establishing the appropriate course of treatment for his HIV condition. Thus, defendants Wendt and Bunts should be dismissed.

**C. Defendant Williams**

In the motion to dismiss or for summary judgment, the defendants argue that plaintiff's Bivens claim against defendant Williams must be dismissed because defendant Williams has not been deliberately indifferent to plaintiffs' medical condition.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The defendant concedes that plaintiff's HIV condition is sufficiently serious to meet the objective component of an Eighth Amendment claim. See Memorandum (Doc. 29-2) at 10.

10

Nevertheless, the defendant states that she was not deliberately indifferent to that serious need, because, although she discontinued plaintiffs' HIV medications, she continued to monitor plaintiffs' condition. The defendant provides no medical support for her decision to discontinue plaintiff's HIV medications, except the alleged advice of a HIV specialist she fails to even name.[3]

Plaintiff, on the other hand, has provided the court with copies of pamphlets from GlaxoSmithKline which emphasize the importance of taking HIV medications. The following are just a few excerpts from those pamphlets:

> HIV MEDS stop HIV from multiplying. When you stop taking your drugs - or don't have enough drugs in your bloodstream - HIV quickly takes advantage and starts making millions of copies of itself. With each new copy, HIV has a chance to change itself (mutate) into a new form that may not be stopped by your drugs. This is called resistence. In other words, when you go back to your medicines, even after a short drug holiday, the drugs may no longer have as much power to keep HIV from making copies of itself.
>
> ****************************
>
> Staying on anti-HIV medicines can help you live a longer, healthier life.
>
> ****************************
>
> When it comes to your HIV meds, don't skip doses. Don't endanger your health status - and maybe your life - by giving HIV a chance to multiply freely.

Plaintiff also refers the Court to an AIDS information website found on the web at http://AIDSinfo.nih.gov. On that site are guidelines for the use of antiretroviral Agents in HIV-

---

[3] Moreover, I am not persuaded by the defendant's characterization of this case as a simple disagreement over the course of treatment. Even a lay person knows that HIV is a very serious and potentially deadly condition and that the proper medication is essential to controlling the affects of the virus. Therefore, the stoppage of medications goes beyond a mere disagreement over the course of treatment as it can have potentially life threatening consequences.

11

1-infected adults. Those guidelines, published on October 6, 2005, state that "HIV viral suppression, reduced rates of resistance, and improved survival have been correlated with high rates of adherence to antiretroviral therapy. According to recommendations in these guidelines, many patients will be initiating, or have initiated therapy, when asymptomatic. This treatment must be maintained for a lifetime, which is an even greater challenge, given that the efficacy of therapy has increased life expectancy for people living with HIV. A commitment to lifelong therapy requires a commitment of both the patient and the health care team."

Additionally, plaintiff alleges that he suffered several serious conditions during the time period in which his HIV medications were stopped. It is undisputed that during the time in which plaintiff was not receiving his medications he was treated for nausea, weight loss, diarrhea, an upper respiratory infection, chills, Thrush, Candidiasis, dry cough, fever, generalized achiness, a viral illness, and dizziness.[4] Therefore, it would seem that plaintiff has provided sufficient evidence, no matter how slim, from which a jury could find that the defendant was deliberately indifferent to his medical needs by stopping his HIV medication.

Moreover, the courts to tackle this issue are split as to whether summary judgment is appropriate. See Owens v. O'Dea, 149 F.3d 1184, 1998 WL 344063 (6th Cir. 1998) (unpublished) (affirming the district court's grant of summary judgment); McNally v. Prison Health Services, 52 F.Supp.2d 147 (D.Me. 1999) (denying summary judgment); Sullivan v. County of Pierce, 216 F.3d 1084, 2000 WL 432368 (9th Cir. 2000) (unpublished) (denying summary judgment); Taylor v. Barnett, 105 F.Supp.2d 483, 488-89 (E.D.Va. 2000) (denying

---

[4] Whether these conditions were a direct result of the lack of HIV medications is clearly an issue of fact.

summary judgment after comparing the conflicting opinions of several courts); Sorrells v. Atwood, 46 Fed.Appx. 732 (5th Cir. 2002) (unpublished) (finding that the dismissal of a similar suit as frivolous and for failure to state a claim was an abuse of discretion); Evans v. Bonner, 196 F.Supp.2d 252 (granting defendants motion for judgment as a matter of law, *after trial*); Benton v. Ozmint, 2004 WL 3249249 *6 (D.S.C. 2004) (granting summary judgment).

Therefore, taking the facts in the light most favorable to the plaintiff, as I must, I find that there are genuine issues of material fact that remain. At the very least, I believe that plaintiff should be able to more fully develop his case before summary dismissal is granted.

## VIII. Recommendation

For the reasons set forth in this Order, it is recommended that the Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 29) be GRANTED in part and DENIED in part. Specifically, it is recommended that plaintiffs' requests for a special diet and his retaliation claims be dismissed for the failure to exhaust. Additionally, I recommend that judgment be entered for defendants Wendt and Bunts and that those defendants be dismissed with prejudice. However, I recommend that judgment not be entered for defendant Williams at this time. In light of this finding, I also recommend that plaintiff's motion for an order directing defendant Williams to disclose the name of the HIV specialist she consulted (Doc. 26) be GRANTED and a scheduling order be issued. Finally, I recommend that plaintiff's second motion for injunctive relief (Doc. 22) be incorporated with the complaint. Therefore, it is recommended that the motion be terminated from the pending motions report and carried with the case.

Within ten (10) days after being served with a copy of this recommendation, any party

may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.[5]

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record.

Dated: January 6, 2006

/s/ John S. Kaull
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[5] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).