# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

KAREEM MUHAMMAD,
a/k/a/ Alfonza Adams,

       Plaintiff,

v.                              CIVIL ACTION NO. 1:05CV6
                                  (Judge Keeley)

Dr. DORIS WILLIAMS; WARDEN
K. J. WENDT; MEDICAL STAFF
OF UNKNOWNS; J. BUNTS; K.M.
WHITE; and HARRELL WATTS,

       Defendants.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

On January 12, 2005, plaintiff Kareem Muhammad a/k/a Alfonza Adams ("Muhammad"), filed a pro se complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Muhammad, an inmate at the Gilmer Federal Correctional Institution ("FCI-Gilmer"), was diagnosed with HIV in 1993. Muhammad alleged that, shortly after being transferred to FCI-Gilmer, Dr. Doris Williams ("Williams"), Warden K.J. Wendt ("Wendt"), Health Services Administrator Janet Bunts ("Bunts") and other unknown named medical staff at FCI-Gilmer discontinued his HIV anti-retroviral medication and replaced such medications with aspirin. Accordingly, Muhammad alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him adequate medical care.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

On May 12, 2005, the Court referred this matter to Magistrate Judge John S. Kaull. Shortly thereafter, on July 12, 2005, the defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." On January 9, 2006, Magistrate Judge Kaull, filed a Report and Recommendation, recommending that the defendant's "Motion to Dismiss or in the Alternative, Motion for Summary Judgment" be granted-in-part and denied-in-part.

On February 3, 2006, Defendant Williams objected to the magistrate judge's recommendation that Muhammad's deliberate indifference claims against her continue to discovery.    She supplemented her objections on February 27, 2006. Muhammad responded to Williams' objections on March 7, 2006 and supplemented his response on March 9, 2006. On March 13, 2006, Williams replied to Muhammad's response, and on March 23, 2006, Muhammad filed a reply.

For the reasons that follow, the Court **AFFIRMS-IN-PART** and **REJECTS-IN-PART** Magistrate Judge Kaull's January 9th Report and Recommendation.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

### I. BACKGROUND

**A. Procedural History**

On February 18, 2005, Magistrate Judge Kaull conducted a preliminary review of this matter pursuant to 28 U.S.C. §§1915(e) and 1915A and issued a report and recommendation as to the viability of Muhammad's claims. He recommended that Muhammad's case not be summarily dismissed and that the defendants be served with Muhammad's complaint. On April 28, 2005, the Court adopted the Magistrate Judge's recommendation and directed the Clerk to serve the complaint on the defendants.

On March 4, 2005, Muhammad filed a motion for injunctive relief, seeking the renewal of his HIV medication. On the same day, Muhammad also filed a motion to join and a proposed "Addendum Complaint" in which he requested permission to join K.M. White ("White"), Regional Director Federal Bureau of Prisons, and Harrell Watts ("Watts"), Administrator, National Inmate Appeals, as defendants in this case.

On May 27, 2005, Magistrate Judge Kaull granted Muhammad's motion to join, and the Clerk was directed to file the "Addendum Complaint" as a separate document. Later that same day, Magistrate Judge Kaull issued a report and recommendation finding that

3

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

Muhammad had failed to allege any personal involvement by defendants White and Watts and also failed to establish supervisory liability. He, therefore, recommended the dismissal of Muhammad's "Addendum Complaint."

Muhammad did not file any objections to Magistrate Judge Kaull's May 27th report and recommendation. Accordingly, on July 14, 2005, the Court adopted the Magistrate Judge's recommendations and dismissed Muhammad's "Addendum Complaint." Because defendants White and Watts were only named in the "Addendum Complaint," they were effectively dismissed from this case by the Court's July 14th Order.

On June 9, 2005, Muhammad filed a second motion for injunctive relief. In that motion, he indicated that his HIV medications had been reinstated, and therefore, he sought an injunction preventing the Bureau of Prisons ("BOP") from ever stopping his HIV medications again. He also sought an order requiring the BOP to provide him with a special diet and directing the defendants to cease retaliation against him for his claims against them. Based on Muhammad's June 9th motion, Magistrate Judge Kaull terminated Muhammad's initial motion for injunctive relief as moot and

directed the defendants to file a combined response to Muhammad's complaint and his second motion for injunctive relief.

On June 30, 2005, Muhammad filed a "Motion for Reconsideration to replyal [sic] time for defendants to the plaintiffs Motion Court Order to Continue Medication, Injunctive Judgement [Sic], Temporary Restraining Order Amendment" and "Motion for leave to add newly discovered defendants, Register [sic] Nurse C. Hamner and Assistant Health Administer [sic] K. Lambright of the F.C.I. Gilmer medical department." Magistrate Judge Kaull construed the June 30th motion as in part a motion for reconsideration[1] and in part a motion for joinder of C. Hamner ("Hamner"), Registered Nurse, and K. Lambright ("Lambright"), Assistant Health Administrator, as defendants in this case.

Muhammad thereafter filed a: (1) "Motion to Combine Federal Tort Claim Act With Current Bivens Civil Action Number 1:05cv6" on July 18, 2005; (2) "Motion to Correct Court Error in Dismissing Defendants K.M. White, Regional Director of the Bureau of Prisons, and Harrell Watts, Inmate National Appeals Administrator" on July 19, 2005; and (3) "Motion for Continuance for Plaintiff to Reply to

---

[1]    Specifically, Muhammad requested reconsideration of the Magistrate Judge's June 10, 2005 Order (dkt no. 24), denying as moot Muhammad's motion for temporary restraining order (dkt no. 10).

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
#### REPORT AND RECOMMENDATION

the Defendant's 'Motion for Summary Judgment to Dismiss or Alternatively', Motion for Reconsideration of Appointment of Counsel for Plaintiff, and Motion for Leave to Amend Complaint" on August 4, 2005.

On August 22, 2005, Magistrate Judge Kaull issued an Order denying Muhammad's motion for reconsideration of his Order dated June 10, 2005. On that same day, Magistrate Judge Kaull issued a report and recommendation, recommending that Muhammad's numerous motions be denied. On March 3, 2006, the Court adopted the Magistrate Judge's August 22nd report and recommendation in its entirety. Therefore, the Court denied Muhammad's motion for joinder of defendants Hamner and Lambright, motion to combine Federal Tort Claim Act with his Bivens Action, motion to correct error, and motion for leave to amend.

## B. Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

On July 12, 2005, defendants Williams, Wendt and Bunts filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." In their motion, the defendants stated that: (1) Muhammad's complaint failed to state a claim upon which relief may be granted; (2) they were entitled to qualified immunity; (3)

### ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 9, 2006 REPORT AND RECOMMENDATION

Muhammad failed to exhaust administrative remedies; and (4) 18 U.S.C. §3626 precluded the injunctive relief sought by Muhammad.

## C. Magistrate Judge's January 9, 2006 Report and Recommendation

On January 9, 2006, Magistrate Judge Kaull issued a report and recommendation concerning the defendants' motion in which he recommended that: (1) Muhammad's special diet and retaliation claims be dismissed for failure to exhaust; (2) defendants Wendt and Bunts be dismissed with prejudice because respondeat superior is inapplicable in a <u>Bivens</u> case and Muhammad had failed to establish supervisory liability as to those defendants; and (3) Muhammad's deliberate indifference claim against defendant Williams continue to discovery.

## D. Defendant Williams' Objections

Defendant Williams objected to the Magistrate Judge's recommendations on February 3, 2006.[2] Williams asserted that she had provided a sufficient basis for the discontinuation of Muhammad's HIV medications in her declaration attached to the defendants' motion. Specifically, under penalty of perjury, Williams had stated in her declaration that Muhammad underwent

_____

[2] Footnote one of Williams' objections stated that defendants Wendt and Bunts were fully satisfied with the Magistrate Judge's recommendations and asked that the Court adopt the same as the recommendations pertained to them.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

resistence testing and that the results from those lab tests established that Muhammad was resistant to two of the three HIV medications he was taking in early 2004. Furthermore, Williams stated that she had contacted an HIV specialist at the National HIV/AIDS Clinicians Consultation Center's Warmline (the "Warmline") who recommended the discontinuation of the HIV medications.

She further asserted that Magistrate Judge Kaull had misapplied the objective component of the Eighth Amendment analysis because he did not determine that Muhammad had established that his condition was not timely or properly treated. She also argued that the Magistrate Judge misapplied the subjective component of the Eighth Amendment analysis because he failed to afford her any deference in the treatment of Muhammad's medical condition. Although Magistrate Judge Kaull stated that he was not persuaded by Williams' characterization of this matter as a mere disagreement over the course of treatment, Williams asserted that the claim indeed boiled down to Muhammad's belief that the HIV medications were necessary and her belief that they were unnecessary at that time. Because she was relying on her medical judgment and also advice from HIV specialists, Williams asserted that the issue in

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

this case is solely a disagreement over the course of treatment of Muhammad's medical condition.

On February 27, 2006, Williams supplemented her objections by producing the records obtained from the Warmline that she claims establish that she had telephone conversations with its HIV specialists concerning Muhammad's HIV treatment.

### E. Muhammad's Response

Muhammad responded to Williams' objections on March 7, 2006, challenging the authenticity of the documents from the Warmline, stating that the documents were not faxed to Williams' counsel, but instead to the Consolidated Legal Center located at Beckley Federal Correctional Institution ("FCI-Beckley") and further stating that the "alleged" HIV specialist who Williams claims advised her to discontinue Muhammad's HIV medication still had not been identified by name and had not provided a declaration in this case to support Williams' reasons for discontinuing his HIV medication. Muhammad stated, however, that the information from GlaxoSmithKline concerning HIV treatment that he had provided in support of his complaint was verifiable. He also stated that Williams only offered her declaration, but no medical records, to dispute his claim that he was given aspirin in lieu of his HIV medication.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

On March 9, 2006, Muhammad supplemented his response to Williams' objections, providing the Court with additional information concerning HIV treatment.

### F. Defendant Williams' Reply

In reply to Muhammad's response, Williams stated that the records from the Warmline were faxed to the Consolidated Legal Center at FCI-Beckley because it handles all cases arising out of the four federal correctional institutions in West Virginia. She also attached a declaration from Lara Crane ("Crane"), an attorney at the Consolidated Legal Center declaring that Crane's duties include assisting United States Attorneys in the defense of lawsuits filed by inmates at various federal correctional institutions, and that, on February 10, 2006, she received the records from the Warmline that had been requested by the United States Attorney's office in this case. Crane further stated that she determined which documents from the Warmline pertained to Williams' conversations concerning Muhammad[3] and then faxed those documents to the Assistant United States Attorney for this case to file with the Court.

---

[3] The names of the HIV patients are not provided during consultations with the Warmline. Accordingly, the documents had to be requested from the Warmline by date and the physician's name.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

Williams also stated that GlaxoSmithKline, which produces the HIV treatment information relied upon by Muhammad, is a pharmaceutical company that manufactures several prescription medications used to treat HIV/AIDS, and, therefore, it has some financial interest in persuading HIV patients to remain on their medications. Moreover, she stated that Muhammad failed to provide portions of the literature provided by GlaxoSmithKline concerning the importance of tracking viral loads and the possibility that medications might have to be stopped.

### G. Muhammad's Reply

On March 23, 2006, Muhammad replied to Williams' response, asserting that Crane's declaration did not authenticate the documents from the Warmline because Crane has no affiliation with the Warmline. Rather, Muhammad states that Crane's affiliation is with Williams' attorney and that Williams failed to provide a declaration from an employee of the Warmline. Finally, Muhammad stated that, despite questioning the completeness of the information concerning HIV treatment that he provided, Williams did not provide the alleged omitted information. Accordingly, he claimed that Williams failed to show that his medical evidence was

unsound. Therefore, Muhammad asserted that his claim should be presented to a jury for resolution.

## II. STANDARD OF REVIEW

The district court judge "shall make a de novo determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); See also Fed. R. Civ. P. 72(b); E.g., Fluellen v. Epstein, 2003 U.S. Dist. LEXIS 23562 (D. S.C. 2003) aff'd 84 Fed. Appx. 299 (4th Cir. 2003). However, for ". . . those portions of the [Magistrate Judge's] Report to which plaintiff has not properly objected . . . " no review is required. Rouse v. Nielsen, 851 F. Supp. 717, 720 (D. S.C. 1994)(citing Fed. R. Civ. P. 72(b))(citation omitted).

Moreover, when ruling on a motion to dismiss a claim, a district court must assume all facts well-pleaded by the petitioner to be true. Walker v. True, 399 F.3d 315, 319 (4th Cir. 2005)(citing Rouse v. Lee, 339 F.3d 238, 248 n.8 (4th Cir. 2003)). Further, a motion to dismiss for failure to state a claim may only be granted as a matter of law "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART**
**THE MAGISTRATE JUDGE'S JANUARY 9, 2006**
**REPORT AND RECOMMENDATION**

(1984). When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits, and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. 477 U.S. at 323. Once "the moving party has carried its

### ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Anderson, 477 U.S. at 248.

### III.  ANALYSIS

### A. Muhammad's Special Diet and Retaliation Claims and Claims Against defendants Wendt and Bunts

Neither the defendants nor Muhammad filed any objections to the Magistrate Judge's findings and recommendations with respect to Muhammad's special diet and retaliation claims, as well as his claims against defendants Wendt and Bunts.[4] Magistrate Judge

---

[4] Magistrate Judge Kaull had concluded that Muhammad had not exhausted his administrative remedies for his special diet and retaliation claims, and, therefore, had recommended that such claims be dismissed without prejudice. He also had concluded that Muhammad had failed to allege that either defendant Wendt

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

Kaull's January 9th report and recommendation informed the parties that failure to object to the recommendations would result in the waiver of their appellate rights on the uncontested issues. Therefore, the Court need not conduct a <u>de novo</u> review of the Magistrate's analysis or conclusions with respect to those claims. <u>See</u> 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") (emphasis added); <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); see also <u>United States v. 2121 E.30th St.</u>, 73 F.3d 1057, 1060 (10th Cir. 1996) (noting that circuit courts have uniformly held that the failure to file specific objections waives appellate review of factual and legal questions).

Therefore, the Court adopts Magistrate Judge Kaull's recommendations concerning Muhammad's special diet and retaliation claims as well as his claims against defendants Wendt and Bunts. Accordingly, the Court dismisses without prejudice Muhammad's

---

or defendant Bunts had been personally involved with establishing the course of his HIV treatment or that either defendant had tacitly authorized or had been indifferent to the alleged violation of his constitutional rights. Therefore, he recommended that defendants Wendt and Bunts be dismissed prejudice.

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
THE MAGISTRATE JUDGE'S JANUARY 9, 2006
REPORT AND RECOMMENDATION**

special diet and retaliations claims and dismisses with prejudice defendants Wendt and Bunts.

## B. Muhammad's Deliberate Indifference Claim Against Williams

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Prison personnel show deliberate indifference to an inmate's serious medical needs by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to medical care. Id. at 97. To establish a "deliberate indifference" claim, a prisoner must satisfy both an objective standard – by showing that a "sufficiently serious" deprivation of a basic human need has occurred – and a subjective standard – by showing that the responsible prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To satisfy the objective element of an Eighth Amendment claim, a plaintiff must establish not only a serious medical need, but also that the serious medical need was not timely or properly treated. Harden v. Green, 27 Fed.Appx. 173, 178 (4th Cir. 2001); Clinkscales v. Pamlico, 238 F.3d 411 (4th Cir. 2000).

### ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 9, 2006 REPORT AND RECOMMENDATION

To satisfy the subjective prong of an Eighth Amendment claim, a plaintiff must establish that the medical provider was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and then disregarded the risk. Lewis v. Angelone, 926 F.Supp. 69, 73 (W.D.Va. 1996). Furthermore, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Hence, mere negligence or malpractice in diagnosis or treatment is not enough. Estelle v. Gamble, 429 U.S. at 106.

Claims of inadequate treatment of HIV must be analyzed with respect to all the surrounding facts and circumstances. Taylor v. Barnett, 105 F.Supp.2d 483, 488-89(E.D.Va. 2000). A court must evaluate all of the facts and circumstances surrounding the allegations of denial of proper medical care to determine whether the defendant acted with deliberate indifference or acted upon informed medical judgment, even if that judgment was in error. Id.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

Muhammad was transferred to FCI-Gilmer on February 13, 2004, and during his medical intake screening process, disclosed that he had been diagnosed with HIV in 1993 and had been taking HIV anti-retroviral medications for approximately 10 years. Specifically, Muhammad was taking Videx (Didanosine), Crixivan (Indinavir Sulfate) and Zerit (Stavudine) prior to his transfer to FCI-Gilmer.

Muhammad claims that the medication sheet from Oklahoma Federal Transfer Center (FTC-Oklahoma) and the medication log from FCI-Gilmer, which he attached to his response to the defendant's dispositive motion, demonstrates that Williams changed the HIV anti-retroviral medications which he had been taking for over 10 years upon his arrival at FCI-Gilmer. However, the medication log from FCI-Gilmer produced by Muhammad demonstrates that Williams prescribed Didanosine, Stavudine, and Indinavir Sulfate at FCI-Gilmer. Clearly, the only difference is that FTC-Oklahoma recorded the medications by both their brand name and generic name while FCI-Gilmer recorded the medications by only their generic names. Therefore, it is undisputed that Williams continued Muhammad on the same HIV medications upon his arrival at FCI-Gilmer until July 8, 2004.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

A few days after Muhammad's intake medical screening, Williams ordered labs for Muhammad to confirm his HIV status and to obtain his CD4 count.[5] Between February and May 2004, Muhammad was evaluated on a monthly basis for his HIV condition and his HIV anti-retroviral medications were continued by Williams at each visit. In late May or early June, 2004, Muhammad began to experience uncontrolled nausea and vomiting which resulted in significant weight loss. Moreover, Muhammad's lab reports concerning resistance testing showed that his body was developing a resistance to two of the three HIV medications that he was taking. Accordingly, Williams contacted the Warmline beginning in late May, 2004 for a consultation on the treatment of Muhammad's HIV condition. At that time, the HIV Specialists at the Warmline advised Williams that the combination of anti-retroviral medications which Muhammad was taking had a substantial risk of resulting in lactic acidosis, a life threatening condition caused by too much lactate in the blood and low blood PH.[6]

---

[5] In monitoring a patient's HIV treatment, physicians monitor their CD4 and viral load counts. See The Body, The Complete HIV/AIDS Resource,<http://www.thebody.com/atn/364/viral_load.html>.

[6] Symptoms associated with lactic acidosis include but are not limited to persistent nausea, vomiting, abdominal pain, and weight loss. See The Body, The Complete HIV/AIDS Resource, <http://www.thebody.com/hivatis/lacticacidosis.html>.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
## REPORT AND RECOMMENDATION

On June 16, 2004, the Health Services Staff at FCI-Gilmer determined that Muhammad was dehydrated and transported him to Stonewall Jackson Memorial Hospital where he was treated for stomach flu and dehydration until June 18, 2004. After his return to FCI-Gilmer, Muhammad continued to suffer from nausea and dehydration and was provided IV fluids as well as continued on his HIV medications.

On July 6, 2004, Williams had a follow-up visit with Muhammad concerning his HIV condition and his persistent gastritis. Muhammad attached the medical records produced by Williams from his July 6th visit to his response to the defendants' dispositive motion. These records demonstrate that Williams noted a possible connection between his gastritis and his HIV anti-retroviral medications and indicated that she intended to call the Warmline to further discuss his case.   Muhammad's medical records further indicate that Williams  discussed Muhammad's case with HIV Specialists at the Warmline following his July 6th visit. Moreover, Muhammad's medical records state that the HIV specialist recommended that Williams discontinue  Muhammad's HIV anti-retroviral medications and follow his CD4 levels over the following three to four months.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

The information provided in Muhammad's medical records is consistent with the Warmline documents produced by Williams that establish she spoke with a HIV specialist at the Warmline on July 6, 2004, concerning a patient who had been diagnosed with HIV and had started on HIV anti-retroviral medication in the 1990s and who had been experiencing nausea and vomiting for two to three weeks. The Warmline documents indicate that one of its physicians expressed a concern that Muhammad was suffering from lactic acidosis and instructed Williams to follow up with the Warmline after monitoring Muhammad's condition while he was off of his HIV anti-retroviral medications.

The medical records produced by Muhammad also demonstrate that Williams discussed the recommendations of the Warmline staff with Muhammad on July 8, 2004, and, as a result, discontinued his HIV anti-retroviral medications. Although Muhammad has alleged that Williams prescribed aspirin in lieu of his HIV anti-retroviral medications, his medical record for July 8th do not support his allegation. Rather, his medical records indicate that Muhammad complained of pain in his left hand with discomfort when Williams palpitated his fingers, which supports Williams claim that she only prescribed the aspirin to treat Muhammad's pain.

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
THE MAGISTRATE JUDGE'S JANUARY 9, 2006
REPORT AND RECOMMENDATION**

According to the Warmline documents, Williams contacted the HIV hotline again on October 14, 2004, indicating that Muhammad's HIV anti-retroviral medications had been discontinued in July, 2004, that his gastrointestinal issues had resolved, and that he had begun to gain weight. The HIV specialist at the Warmline indicated that Muhammad's condition was a complicated case and that Williams should obtain another set of labs to obtain additional data to determine whether to restart Muhammad on anti-retroviral medications.

Later, on March 18, 2005, Williams contacted the Warmline and discussed whether to start Muhammad on a new combination of anti-retroviral medications. As a result, because of Muhammad's resistance to the previously prescribed anti-retroviral medications, Williams prescribed Sustiva, Lamivudine and Tenofovir to him.

The affidavit provided by Muhammad in support of his response to the defendants' motion, as well as the declarations provided by Williams in support of the defendant's motion and in support of her objections to the Magistrate Judge's report and recommendation, establish that Williams evaluated Muhammad's HIV condition and monitored his CD4 count and viral load levels on a monthly basis

before and after the discontinuation of his HIV medications. Moreover, after discontinuing his HIV medications in July, 2004, Williams diagnosed and treated any new conditions or symptoms developed by Muhammad such as Thrush, upper respiratory infections, and sinus infections. Therefore, it is undisputed that Williams consistently evaluated and treated Muhammad's HIV condition.

The parties, however, disagree on the correctness of Williams' decision to discontinue his anti-retroviral medications on June 8, 2004 and to not reinstate any such medications until March 18, 2005. Courts have consistently held that a disagreement over the appropriate course of treatment does not rise to the level of a constitutional violation. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Peterson v. Scully, 707 F.Supp. 759, 761 (S.D.N.Y. 1989)(plaintiff alleged that medical personnel did not prescribe the same medication previously prescribed at other facility; mere disagreement over proper medical treatment does not state a claim).

Dr. Williams' actions simply do not approach the level of deliberate indifference proscribed by the Eighth Amendment. The undisputed facts demonstrate that she provided Muhammad almost constant medical care and supervision for his HIV condition.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
## THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

Furthermore, she sought information from other medical professionals in implementing the course of treatment she provided for Muhammad's HIV condition. If mistakes were made, and this Court cannot say there were any, they were mistakes of medical judgment that are not subject to judicial review under the Eighth Amendment. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).

The parties agree that Muhammad has a serious medical condition requiring vigilant medical treatment. Although Muhammad has provided general information produced by a pharmaceutical company concerning the importance of medication in the treatment of HIV, he has failed to provide any medical evidence establishing that, given his specific symptoms and lab results, Williams' course of treatment was improper. Therefore, Muhammad has failed to establish the objective element of the deliberate indifference claim. Moreover, given the record's clear illustration of Williams' commitment to treating Muhammad's HIV condition, and given the absence of any evidence supporting Muhammad's claim that Williams acted with deliberate indifference to his serious medical needs, Muhammad failed to establish the subjective element of his deliberate indifference claim. Accordingly, Muhammad's Eighth Amendment claim against Williams cannot stand.

24

### ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART
### THE MAGISTRATE JUDGE'S JANUARY 9, 2006
### REPORT AND RECOMMENDATION

### IV.  CONCLUSION

For the reasons stated above, the Court **AFFIRMS-IN-PART** and **REJECTS-IN-PART** Magistrate Judge Kaull's January 9, 2006 Report and Recommendation, **GRANTS** the defendants, Dr. Doris Williams, K.J. Wendt, and Janet Bunts', "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (dkt no. 29), and **DISMISSES WITH PREJUDICE** Muhammad's complaint. Accordingly, Muhammad's second motion for injunctive relief (dkt no. 22) and motion for defendant Williams to disclose the name of the HIV specialist she consulted (dkt no. 26) are also **DENIED AS MOOT** in light of the Court's ruling.

It is so **ORDERED**.

The Clerk is directed to mail a copy of this Order to the pro se plaintiff and any counsel of record.

Dated: March 30, 2006.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE